# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 41

### OCTOBER TERM, A.D. 2014

### March 24, 2015

IN THE MATTER OF THE WORKER'S
COMPENSATION CLAIM OF:

DEAN HILDEBRANT,

Appellant
(Petitioner),

v.                                                      S-14-0166

STATE OF WYOMING, ex rel.,
DEPARTMENT OF WORKFORCE
SERVICES, WORKERS' SAFETY AND
COMPENSATION DIVISION,

Appellee
(Respondent).

*Appeal from the District Court of Fremont County*
*The Honorable Norman E. Young, Judge*

*Representing Appellant:*
  Frank B. Watkins of Frank B. Watkins, PC, Riverton, Wyoming.

*Representing Appellee:*
  Peter K. Michael, Wyoming Attorney General; John D. Rossetti, Deputy Attorney General; Michael J. Finn, Senior Assistant Attorney General; Samantha Caselli, Assistant Attorney General.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]    Dean Hildebrant suffered a compensable workplace injury when he fell while working for Central Wyoming College in Riverton.  As part of his treatment, Mr. Hildebrant's doctor recommended implantation of a spinal cord stimulator in his back.  The Wyoming Workers' Safety and Compensation Division (the Division) denied preauthorization for the implant.  Mr. Hildebrant requested a contested case hearing, and at its conclusion the Office of Administrative Hearings (OAH) determined that the implant was premature and upheld the Division's denial.  Mr. Hildebrant appealed to the district court which affirmed the OAH's decision.  We likewise affirm the determination of the OAH.

*ISSUE*

[¶2]    1.   Was there substantial evidence to support the OAH's decision to uphold the Division's denial of Mr. Hildebrant's preauthorization request for implantation of a spinal cord stimulator?

*FACTS*

[¶3]    On August 3, 2011, Mr. Hildebrant was working as an HVAC technician at Central Wyoming College in Riverton, Wyoming, when he fell approximately twenty feet from a ladder.  Unable to move, Mr. Hildebrant summoned help by radio.  An ambulance was called, and Mr. Hildebrant was taken to the local hospital where he complained of lower back pain and pain in his right shoulder and leg.  After an initial examination at Riverton Medical Center, Mr. Hildebrant was transferred to Wyoming Medical Center in Casper for further evaluation.  On September 20, 2011, Dr. Joseph G. Sramek, the physician who treated Mr. Hildebrant at Wyoming Medical Center, described Mr. Hildebrant's injuries:

> Mr. Hildebrant is a pleasant 48-year-old male who is status post a fall that occurred on 08/03/2011. . . .  He has some ongoing neck pain.  He has ongoing right shoulder pain.  He has pain that is in his mid-back, and he states that his right leg occasionally wants to give out on him. . . .  He had an MRI of his right shoulder which again showed some thinning and increased signal of the central supraspinatus tendon, consistent with tendinitis or small partial tear, and a bone bruise in the superolateral portion of the humeral head.  With regards to his cervical, thoracic, and lumbar spine, he has some degenerative disc changes at C5-6 and C6-7.  These do not appear to be causing neural impingement centrally or foraminally.  He has a small compression fracture of T7; . . .

1

the overall sense is that this appears more chronic, although I cannot absolutely rule out that this did not occur with the fall. In any regards, this should heal well over time with nonoperative intervention. His lumbar spine shows postoperative changes but nothing to suggest superfusion, stenosis, or any acute traumatic changes.

. . . .

Patient has ongoing pain. This slowly seems to be improving. I see nothing on his cervical, thoracic or lumbar spine that warrants any type of surgical intervention at this time.

[¶4]    Mr. Hildebrant applied for workers' compensation benefits, and the Division found that he had suffered a compensable injury as a result of the fall. The Division determined that the body parts to be covered included the "low back (lumbar), mid back (thoracic), and right shoulder." Mr. Hildebrant received treatment from various providers. Much of his treatment focused on pain management from Dr. Anthony P. Williamson,[1] which included substantial doses of narcotic pain medication. Dr. Williamson concluded that treatment with narcotic pain medication was "not going to be a long term solution," and referred Mr. Hildebrant to Dr. Todd Hammond[2] for further treatment.

[¶5]    Dr. Hammond recommended that Mr. Hildebrant undergo steroid injections in an attempt to neutralize the pain. Following two such injections without significant pain relief, Dr. Hammond recommended a spinal cord stimulator trial.[3] Dr. Hammond submitted a request to the Division for preauthorization of the spinal cord stimulator trial on July 18, 2012. Upon receipt, the Division submitted the case to two independent physicians for review in accordance with the Division's rules and regulations.[4]

[¶6]    After a review of the records provided by the Division, Dr. Robert A. Narotzky recommended that the Division deny the preauthorization request. In his initial report, Dr. Narotzky concluded that the spinal cord stimulator trial "would not be unreasonable

---

[1] Dr. Williamson had been treating Mr. Hildebrant's back pain for nearly a year prior to his August 3, 2011 fall. In fact, Dr. Williamson had seen Mr. Hildebrant for "depression, difficulty sleeping, and low back and left lower extremity pain" on August 1, 2011, two days prior to the fall.

[2] Dr. Hammond had also treated Mr. Hildebrant for back pain prior to his fall on August 3, 2011.

[3] A spinal cord stimulator is an implant used to block pain impulses by electrically stimulating the spinal cord. The stimulator must be placed on the back in the correct position to ensure pain relief. For this reason, a trial placement is performed before the final implant to ensure correct placement.

[4] The rules and regulations state, "Treatment rendered by a health care provider to a Wyoming workers' compensation claimant for injuries, will be professionally reviewed and preauthorized[.]" Rules, Regulations & Fee Schedules of the Wyo. Workers' Comp. Div., ch. 10 § 23(a) (filed June 6, 2011).

for treating the patient's back and leg pain but as noted above I do not believe his back and leg symptoms are related to his work injury nor does it appear to be his primary problem."

[¶7]    Dr. Brian H. Wieder also reviewed the case and likewise determined that the preauthorization request should be denied.  Dr. Wieder concluded:

> **I cannot recommend** authorization of the [spinal cord stimulator trial].  I recommend a concerted effort of nicotine cessation, conditioning, and psychologic re-evaluation with the purpose of evaluating pain behaviors, magnification, motivation for improvement . . . .  With efforts on behalf of the patient to terminate nicotine, and show motivation for improvement, and psychologic assessment that demonstrates the patient to be a favorable prognostic candidate for spinal cord stimulator placement, then I would anticipate approval of the study based on the guidelines the Division has set forth, however, prognosis remains guarded.

Based on the opinions of Dr. Narotzky and Dr. Wieder, the Division denied the preauthorization request.  Mr. Hildebrant requested a contested case hearing.

[¶8]    Prior to the hearing, the Division submitted additional materials to Dr. Narotzky and Dr. Wieder which included Mr. Hildebrant's substantial medical history.  The Division requested that the physicians review the additional materials and provide any supplemental opinions arising as a result.  Mr. Hildebrant's medical history revealed that he had suffered substantial injury to his back from prior workplace injuries, undergoing no fewer than four back surgeries between 1986 and 1997.  He was also classified as 100% disabled by the workers' compensation division in New Jersey as a result of a workplace injury to his back.  Despite this disability rating, Mr. Hildebrant returned to work in the construction industry in 1997.  In 2007, he again injured his back while at work.  No additional surgeries were performed; however, Mr. Hildebrant received primarily pain treatments for his back from 2007, which continued until his August 3, 2011 fall.

[¶9]    After reviewing Mr. Hildebrant's extensive medical history, both Dr. Narotzky and Dr. Wieder submitted supplemental reports, and, once more, advised against authorizing the spinal cord stimulator trial.

[¶10]   At the contested case hearing, the OAH hearing examiner heard testimony from Dr. Williamson; Kirk Clark, Mr. Hildebrant's supervisor at Central Wyoming College; and Mr. Hildebrant.  The hearing examiner was also presented with copious exhibits spanning seven volumes.  After taking the matter under advisement, the hearing examiner

3

entered his Findings of Fact, Conclusions of Law and Order. Discussing the various opinions of the physicians involved in the case, the hearing examiner concluded that "Dr. Narotzky's opinions are the most persuasive." The hearing examiner explained that while Mr. Hildebrant's treating physician, Dr. Hammond, recommended a spinal cord stimulator, his recommendation was "not terribly specific and not responsive to the concerns raised by Drs. Narotzky and Wieder." Addressing the opinions of Dr. Wieder, the hearing examiner observed, "Dr. Wieder was most troubled by the finding of a work injury, but having to work with that conclusion seemed to go to extremes in an effort to determine that the spinal cord stimulator was not reasonable and necessary treatment." Adopting the reasoning of Dr. Narotzky, the hearing examiner stated:

> [Dr. Narotzky] acknowledged that there was at least some component to [Mr. Hildebrant's] low back pain as a result of the fall off the ladder, and the Office finds the reasons for this explained by Dr. Narotzky in a persuasive manner. However, Dr. Narotzky still did not believe that a trial of a spinal cord stimulator was appropriate at this time without better understanding and addressing [Mr. Hildebrant's] cervical spine issues. Again, the Office is convinced by Dr. Narotzky's explanation that a spinal cord stimulator trial is premature at this time.

[¶11] Mr. Hildebrant appealed the decision to the district court, which affirmed the OAH, stating, "The record, as detailed by the hearing officer, contains relevant evidence a reasonable mind might accept as adequate to support his conclusion, and the conclusion is not clearly contrary to the overwhelming weight of the record, nor arbitrary and capricious." Mr. Hildebrant timely appealed.

## *STANDARD OF REVIEW*

[¶12] We review a district court's action on an administrative decision as though the case came directly from the administrative agency. *Stevens v. State ex rel. Dep't of Workforce Servs., Workers' Safety & Comp. Div.*, 2014 WY 153, ¶ 30, 338 P.3d 921, 928 (Wyo. 2014) (citing *Hirsch v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2014 WY 61, ¶ 33, 323 P.3d 1107, 1115 (Wyo. 2014)). In performing such a review, we are governed by the Wyoming Administrative Procedure Act which provides:

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or

4

those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

. . . .

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2013). Mr. Hildebrant argues that the hearing examiner erred in upholding the Division's denial of the preauthorization request. We review such factual determinations under our substantial evidence standard. *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 27, 188 P.3d 554, 562 (Wyo. 2008).

Substantial evidence "means relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Green v. State ex rel. Dep't of Workforce Servs., Workers' Safety & Comp. Div.*, 2013 WY 81, ¶ 13, 304 P.3d 941, 946 (Wyo. 2013) (citing *Jacobs v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 62, ¶ 8, 301 P.3d 137, 141 (Wyo. 2013)). "'Findings of fact are supported by substantial evidence if, from the evidence preserved in the record, we can discern a rational premise for those findings.'" *Id.* (quoting *Kenyon v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 14, ¶ 11, 247 P.3d 845, 849 (Wyo. 2011)). Whether we might reach the same result or not, we will not reweigh the evidence, but instead defer to the

5

[agency's] decision if it is based upon relevant evidence that a reasonable mind might accept. *See Torres v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 93, ¶ 24, 253 P.3d 175, 181 (Wyo. 2011).

*Stevens*, 2014 WY 153, ¶ 31, 338 P.3d at 928.

[¶13] Under our substantial evidence standard, the hearing examiner is given wide latitude to "determine relevancy, assign probative value, and ascribe the relevant weight given to the evidence presented[,]" including medical evidence and opinion. *Spletzer v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 90, ¶ 21, 116 P.3d 1103, 1112 (Wyo. 2005) (citing *Clark v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 934 P.2d 1269, 1271 (Wyo. 1997)). We therefore defer to the hearing examiner in such matters, and will only overturn the hearing examiner's determinations if they are "clearly contrary to the great weight of the evidence." *Taylor v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 148, ¶ 16, 123 P.3d 143, 148 (Wyo. 2005) (quoting *Hurley v. PDQ Transp., Inc.*, 6 P.3d 134, 138 (Wyo. 2000)). Because the hearing examiner is charged with the responsibility of "sort[ing] through and weigh[ing] the differences in evidence and testimony, including that obtained from medical experts[,]" *Id*. (citing *Morgan v. Olsten Temporary Servs.*, 975 P.2d 12, 16 (Wyo. 1999)), he may disregard evidence found to be "evasive, equivocal, confused, or otherwise uncertain[.]" *Id*. (quoting *Krause v. State ex rel. Wyo. Workers' Comp. Div.*, 803 P.2d 81, 83 (Wyo. 1990)). We have stated, "If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test." *Dale*, 2008 WY 84, ¶ 22, 188 P.3d at 561.

## DISCUSSION

[¶14] The Wyoming Worker's Compensation Act (the Act) provides benefits for employees who suffer work-related injuries. *Beall v. Sky Blue Enters., Inc.*, 2012 WY 38, ¶ 21, 271 P.3d 1022, 1031 (Wyo. 2012). The Act is intended to "assure the quick and efficient delivery of indemnity and medical benefits to injured and disabled workers at a reasonable cost to . . . employers[.]" Wyo. Stat. Ann. § 27-14-101(b) (LexisNexis 2013). The Division is tasked with carrying out this intent. *Id.*

I. ***Was there substantial evidence to support the OAH's decision to uphold the Division's denial of Mr. Hildebrant's preauthorization request for implantation of a spinal cord stimulator?***

[¶15] It is undisputed that Mr. Hildebrant suffered a compensable workplace injury. The issue in this case arises from the Division's denial of preauthorization pursuant to Wyo.

Stat. Ann. § 27-14-601(o) (LexisNexis 2013), and the Division's rules and regulations which set forth the following standards for a preauthorization determination: (1) whether the treatment is reasonable; (2) whether the treatment is medically necessary; and (3) whether the treatment is in compliance with the Division's case management and treatment guidelines. Rules, Regulations & Fee Schedule, ch. 10 § 23(a) (filed June 6, 2011). This Court has added another consideration—whether the treatment is causally related to the workplace injury deemed compensable. *Beall*, 2012 WY 38, ¶¶ 21, 23, 271 P.3d at 1032. The dispute over the preauthorization determination in this case is twofold: (1) is there substantial evidence supporting the OAH's conclusion that the treatment was causally related to the compensable injury; and (2) is there substantial evidence supporting the OAH's determination that the treatment was not medically necessary?

## A. Causally Related

[¶16] We begin with the inquiry of whether the treatment is causally related to the compensable injury. Mr. Hildebrant argues that there is substantial evidence in the record to support the conclusion that the treatment is causally related to his compensable injury. The State argues that there is no causal connection. We find that there is substantial evidence to support the hearing examiner's conclusion that the treatment is causally related to Mr. Hildebrant's compensable workplace injury.

[¶17] The burden rests with the claimant to demonstrate that the treatment for which preauthorization is sought is causally related to the compensable injury. *Beall*, 2012 WY 38, ¶¶ 24-27, 271 P.3d at 1032-33; *Delacastro v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2014 WY 40, ¶ 22, 321 P.3d 327, 333 (Wyo. 2014) ("A workers' compensation claimant has the burden of proving each of the essential elements of his claim, including causation, by a preponderance of the evidence.") In this case, the hearing examiner did not expressly find the spinal cord stimulator trial was causally related to the compensable injury. However, the examiner relied on Dr. Narotzky's opinion in part because Dr. Narotzky "acknowledged that there was at least some component to [Mr. Hildebrant's] low back pain as a result of the fall off the ladder[.]"

[¶18] The Division determined that Mr. Hildebrant suffered a compensable injury to his "low back (lumbar), mid back (thoracic), and right shoulder." In his supplemental report, Dr. Narotzky attributed a number of causes to Mr. Hildebrant's ongoing back and leg pain, including the August 3, 2011 fall. Moreover, Dr. Narotzky recognized that, generally, a spinal cord stimulator can be a reasonable treatment to relieve back pain. Thus, the evidence, presented through Dr. Narotzky's supplemental report, demonstrates a causal connection between Mr. Hildebrant's compensable injury—"low back (lumbar), mid back (thoracic), and right shoulder" resulting from the August 3, 2011 fall—and the

proposed treatment—a spinal cord stimulator trial.[5]  The substantial evidence presented through Dr. Narotzky supports the hearing examiner's conclusion that there was a causal connection between Mr. Hildebrant's compensable injury of August 3, 2011, and the proposed treatment of implantation of a spinal cord stimulator.

## B.    Medically Necessary

[¶19]   We also find that there is substantial evidence in the record to support the hearing examiner's conclusion that the spinal cord stimulator was not medically necessary.

[¶20]   The Division's rules and regulations define "medically necessary treatment" as "those health services for a compensable injury that are reasonable and necessary for the diagnosis and cure or significant relief of a condition consistent with any applicable treatment parameter." Rules, Regulations & Fee Schedules of the Wyo. Workers' Comp. Div., ch. 1 § 4(al) (filed June 6, 2011).  Mr. Hildebrant presented no evidence to the OAH supporting his contention that implantation of a spinal cord stimulator was necessary in this case.  There were four different physicians involved in Mr. Hildebrant's case, and not one asserted that the treatment was necessary to diagnose, cure or significantly relieve Mr. Hildebrant's condition.  Neither Dr. Narotzky nor Dr. Wieder concluded that the treatment was necessary, and, in fact, they both recommended denial of the implant because Mr. Hildebrant's other issues should retain priority.  Dr. Williamson simply deferred to Dr. Hammond's judgment as to whether the treatment was necessary, and the only evidence[6] of Dr. Hammond's opinion consisted of two letters he wrote to Mr. Hildebrant's attorney and Dr. Hammond's notes, none of which asserted that implantation of the spinal cord stimulator was necessary to diagnose, cure or significantly relieve Mr. Hildebrant's condition.

[¶21]   Moreover, while the physicians generally agreed that implantation of a spinal cord stimulator was reasonable treatment for lower back and leg pain, substantial evidence in the record demonstrates that it was not reasonable treatment for Mr. Hildebrant under these circumstances.  Dr. Narotzky testified:

> Q.  I think you testified that the pain stimulator is reasonable
> and necessary for Mr. Hildebrant; is that correct?
>
> A.  Well, the caveat that I've said several times is that I'm
> concerned about Dr. Williamson's -- Dr. Williamson's note
> that says [Mr. Hildebrant's] primary complaint is neck pain.

---

[5] Dr. Williamson likewise established a causal relationship between Mr. Hildebrant's compensable injury and the proposed treatment.

[6] Neither party offered any testimony from Dr. Hammond, either at the contested case hearing or through deposition.

His secondary complaint is his right leg weakness or right leg giving way on him. And then further down the list is his back pain and his leg pain. And that concerns me, because as I've also said several times here, that putting a spinal cord stimulator in to treat back and leg pain is not going to do anything for both his primary complaint and his secondary complaint. **So where that complaint lies in the spectrum of things, if you don't deal with the things that are most troubling, I'm not sure that anything else you do is going to have much impact.**

So do I think spinal cord stimulation as a means of treating chronic back and leg pain is a reasonable approach? Yes, it is. But, again, with the caveat that that's not his primary complaint here, at least according to Dr. Williamson's note.

(Emphasis added.) The hearing examiner found Dr. Narotzky's opinions to be the most persuasive, and we defer to the hearing examiner's determinations regarding the relevancy, probative value, and weight to be given to the evidence presented. *Spletzer,* 2005 WY 90, ¶ 21, 116 P.3d at 1112; *Taylor,* 2005 WY 148, ¶ 16, 123 P.3d at 148. The record contains substantial evidence supporting the OAH's conclusion that implantation of a spinal cord stimulator was not "medically necessary" as defined by the Division.

[¶22] Mr. Hildebrant presents two arguments on appeal related to the medical necessity of the proposed treatment. First, Mr. Hildebrant argues that Dr. Narotzky's conclusions support a finding that the treatment is medically necessary because Mr. Hildebrant had, by the time of the hearing, received treatment for his primary complaint of neck pain and has since experienced substantial relief. Second, Mr. Hildebrant argues that the hearing examiner inappropriately apportioned his injury between Mr. Hildebrant's preexisting condition and his compensable injury. We take each argument in turn.

[¶23] Mr. Hildebrant alleges that Dr. Narotzky's conclusions support the medical necessity of a spinal cord stimulator because he opined that:

Mr. Hildebrant's primary complaint is one of neck pain, arm pain and numbness with low back and right leg complaints being secondary. . . . [Mr. Hildebrant's low back and right leg pain] might well be treated with spinal cord stimulation but should certainly wait until the issues of his cervical spine are resolved as that is his primary complaint.

9

In his appellate brief, Mr. Hildebrant cites to his own testimony at the contested case hearing stating that he had undergone neck surgery, and that his neck pain "had resolved," alleging that Dr. Narotzky's opinion now supports the conclusion that a spinal cord stimulator is medically necessary. In fact, Mr. Hildebrant did not testify that his neck pain had "resolved." During his deposition, Mr. Hildebrant testified:

> Dr. Williamson wanted to wait and see how this neck surgery progressed and if it relieved the drastic headaches and pain that I was having in my head. And, you know, I'm happy to say that a level of the pain has diminished, but I still have severe headaches. And I'm still hoping for more progress from this neck surgery.

At the contested case hearing, Mr. Hildebrant testified:

> A. My neck seems to be doing very well. I'm very happy with the surgery, but there's still some underlying issues there that I don't know if it's related to my neck or if it's related to some other part of my back, but I have severe headaches all the time.
>
> Q. What about pain in the neck?
>
> A. The pain in the neck at this point is, you know, what I would say is livable.

No physician testified as to the "resolution" of Mr. Hildebrant's primary complaints related to his cervical spine issues. *See* Rules, Regulations & Fee Schedules of the Wyo. Workers' Comp. Div., ch. 10 § 23(a) (requiring professional review for preauthorization).

[¶24] Moreover, there is still nothing in the record that would support a conclusion that the treatment, even considering Mr. Hildebrant's neck surgery, was reasonable or necessary. While Dr. Narotzky did state that Mr. Hildebrant's cervical spine issues should be treated first, he did not declare that implantation of a spinal cord stimulator was reasonable and necessary for Mr. Hildebrant once his other issues had resolved. Instead, Dr. Narotzky speculated, "[Mr. Hildebrant's low back and right leg pain] **might** well be treated with spinal cord stimulation but should certainly wait until the issues of his cervical spine are resolved as that is his primary complaint." (Emphasis added.) "Might" is a far cry from "reasonable and necessary."

[¶25] Mr. Hildebrant also argues that the hearing examiner erred when he attempted to apportion the relative contributions to Mr. Hildebrant's injury between his preexisting condition and the compensable injury. We have previously held that "apportionment is

10

not permitted by Wyoming statute." *Judd v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 85, ¶ 40, 233 P.3d 956, 971 (Wyo. 2010) (citing *State ex rel. Wyo. Workers' Safety & Comp. Div. v. Faulkner*, 2007 WY 31, ¶ 18, 152 P.3d 394, 399-400 (Wyo. 2007)). There is nothing in the hearing examiner's determination, however, that suggests apportionment occurred in this case. Dr. Narotzky did opine that Mr. Hildebrant's "current difficulty with his lumbar spine and right leg is more related to the 2007 injury than it is to the other issues," such as the August 3, 2011 fall. However, there is nothing in the record to suggest that the hearing examiner relied on this conclusion.

## *CONCLUSION*

[¶26] There is substantial evidence in the record supporting the OAH's conclusion that the proposed treatment was causally related to Mr. Hildebrant's compensable injury. There is also substantial evidence supporting the OAH's determination that implantation of a spinal cord stimulator was not medically necessary. Affirmed.