DAVIS, Chief Justice.
[¶1] John Lysne sought worker's compensation coverage for knee replacement surgery, which the Medical Commission (the Commission) approved. The Workers' Compensation Division (the Division) appeals, contending that Mr. Lysne did not provide adequate proof that his need for the surgery is causally related to his work injury. We affirm.
ISSUE
[¶2] The Division asserts one issue, which we rephrase as:
Was the Commission's finding that Mr. Lysne's work injury caused his need for knee replacement surgery supported by substantial evidence and not contrary to law?
FACTS
[¶3] On July 22, 2013, Mr. Lysne, a roofer employed by Inman Roofing, injured his left knee while carrying shingles up a ladder and onto a roof. As he stepped onto the roof with his left foot, his leg "gave out," causing him pain. When his knee did not heal after a month, he visited his doctor, who prescribed pain medication and told him to treat the knee with rest, ice and elevation. Mr. Lysne's knee did not improve, and when he sought the renewal of his pain medication prescription, his doctor indicated that he would need an MRI. Mr. Lysne then filed a worker's compensation claim and received an MRI.
[¶4] After reviewing the MRI, Mr. Lysne's doctor referred him to Dr. Bruce Smith, an orthopedic surgeon in Cheyenne. Dr. Smith examined Mr. Lysne on January 21, 2014, noted that he continued to experience pain, *293 and diagnosed him with chondromalacia of the left knee, medial meniscus tear, patellar malalignment syndrome, and plica syndrome of the knee. Based upon his findings, on February 6, 2014, Dr. Smith operated on Mr. Lysne's knee, performing an arthroscopic excision of the medial meniscus tear, arthroscopic chondral shaving of the patella, femoral groove, the medial femoral condyle and the lateral tibial plateau, and an arthroscopic excision of the medial plica in the knee.
[¶5] Post-surgery, Mr. Lysne began physical therapy. Initially, his knee did well, but as his therapy progressed, Mr. Lysne was unable to "work past the pain." Consequently, in May of 2014, Dr. Smith recommended continued physical therapy and encouraged him to seek a second opinion. In June of 2014, Mr. Lysne saw Dr. Mark McKenna, another orthopedic surgeon, who ordered a second MRI. That MRI revealed "meniscal fraying and irritation" and "swelling within the soft tissue and some cartilage damage." On July 31, 2014, Dr. McKenna performed a second arthroscopic procedure and found "a tear of the posteromedial meniscus in the posterior horn[,] ... loose fragments within the joint[,] ... and synovitis and scar tissue formation over the anterior aspect of the joint." In October of 2014, Mr. Lysne again saw Dr. McKenna and reported continued and worsening pain in the knee. Dr. McKenna gave him an intraarticular injection of pain medications in his knee to relieve his pain and suggested that Mr. Lysne undergo an MRI of his back to determine whether it was contributing to his knee problems. Based upon his review of the results of the second MRI, Dr. McKenna recommended that Mr. Lysne see a neurologist or neurosurgeon and did not think that a knee replacement would help him at that point. Accordingly, Mr. Lysne met with a neurosurgeon who ruled out his back as a cause of his knee pain.
[¶6] On January 19, 2015, Mr. Lysne saw Dr. Jean Basta, a third orthopedic surgeon. Dr. Basta concluded that Mr. Lysne had a left medial meniscus tear, a left chondromalacia patella, and internal derangement in the left knee. Dr. Basta suspected that "he is retearing the medial meniscus because it is in a weakened state." Dr. Basta gave Mr. Lysne another injection in his knee and ordered him to use crutches and remain non-weight-bearing for six weeks, and, if the pain persisted, she would perform a third arthroscopic surgery at that time.
[¶7] Four days after seeing Dr. Basta and at the direction of the Division, Mr. Lysne saw Dr. Ricardo Nieves for an independent medical evaluation and impairment rating evaluation (IME). Despite the fact that Mr. Lysne was non-weight-bearing and had just received an injection for continued pain in his left knee, Dr. Nieves concluded that he was at maximum medical improvement (MMI) and that he had sustained a 1% whole body physical impairment. On March 4, 2015, the Division determined that Mr. Lysne's workplace injury resulted in a 1% impairment of his left knee and awarded him benefits in the amount of $1,509.68. Mr. Lysne objected to this determination, arguing that the conclusion that he had reached MMI was premature.
[¶8] On March 10, 2015, at the suggestion of Dr. Edgrin, who saw Mr. Lysne for reasons unrelated to his knee, Mr. Lysne saw Dr. Charlie Yang, an orthopedic surgeon in Denver, Colorado. Dr. Yang discussed treatment options with Mr. Lysne, including a left total knee arthroplasty (replacement). Mr. Lysne indicated that he would like to pursue the surgical intervention upon obtaining worker's compensation approval. In April, Dr. Ricardo Nieves supplemented his IME evaluation, concluding that "[i]n my professional opinion within a reasonable degree of medical probability a left total knee replacement surgery is not causally related to Mr. Lysne's work injury of 7/22/2013 in which the resulting work injury was of a medial meniscus injury." On April 16, 2015, the Division denied Mr. Lysne's request for the preauthorization of his total knee replacement surgery. Mr. Lysne again objected to that determination.
[¶9] The Division then referred Mr. Lysne to Dr. Mark Rangitsch, a fifth orthopedic surgeon, for another IME. In his May 4, 2015 report, Dr. Rangitsch explained that "further treatment options [ ] could help" and suggested "unicompartmental [partial] knee replacement." Subsequently, the Division referred *294 Mr. Lysne to Dr. Greg Reichardt, a physical and rehabilitation medicine specialist, for a third IME on June 23, 2015. Dr. Reichardt concluded that a total knee replacement was not reasonable and necessary medical care for his workplace injury. Two months later, on August 17, 2015, Mr. Lysne saw a sixth orthopedic surgeon, Dr. Rocci Trumper. Dr. Trumper examined Mr. Lysne and recommended a total knee replacement.
[¶10] After a contested case hearing on Mr. Lysne's objections to the Division's determinations, the Commission reversed the Division's March 4, 2015 and April 16, 2015 determinations. The Commission found that the physical impairment rating of 1% whole body offered by the Division was premature, that Mr. Lysne was not at a level of maximum medical improvement when he was rated by Dr. Nieves, and that he should be placed back on Temporary Total Disability payments for an additional period of time, terminating in June 2015 when he resumed gainful employment. With respect to preauthorization for total knee replacement surgery, the Commission concluded:
The hearing panel further finds that the preauthorization request for total knee replacement surgery is reasonable and necessary under the circumstances and causally related to [Mr. Lysne's] work injury and is fully compensable.
The Division appealed, and the district court affirmed the Commission's findings. The Division timely appeals.
STANDARD OF REVIEW
[¶11] We review an appeal from a district court's review of an administrative agency's decision as if the case came directly from the agency and give no deference to the district court. Morris v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div. , 2017 WY 119, ¶ 23, 403 P.3d 980, 986 (Wyo. 2017) (citing Guerrero v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div. , 2015 WY 88, ¶ 11, 352 P.3d 262, 265 (Wyo. 2015) ). Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2017) establishes the scope of our review:
(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
....
(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
(B) Contrary to constitutional right, power, privilege or immunity;
(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
(D) Without observance of procedure required by law; or
(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.
[¶12] We must decide whether there is substantial evidence to support the Commission's findings of fact. Dale v. S & S Builders , 2008 WY 84, ¶ 22, 188 P.3d 554, 561 (Wyo. 2008). We consider "whether [the Commission's] conclusion was contrary to the overwhelming weight of the evidence in the record as a whole." Id. We "defer to the hearing examiner in [factual] matters, and will only overturn the hearing examiner's determinations if they are 'clearly contrary to the great weight of the evidence.' " Hildebrant v. State ex rel Dep't of Workforce Servs. , 2015 WY 41, ¶ 13, 345 P.3d 875, 879 (Wyo. 2015) (quoting Taylor v. State ex rel. Wyo. Workers' Safety & Comp. Div. , 2005 WY 148, ¶ 16, 123 P.3d 143, 148 (Wyo. 2005) ).
If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept *295 in support of the agency's conclusions. It is more than a scintilla of evidence.
Walton v. State ex rel. Wyo. Workers' Safety & Comp. Div. , 2007 WY 46, ¶ 9, 153 P.3d 932, 935 (Wyo. 2007) (citation omitted). We review an agency's conclusions of law de novo and will affirm only if the agency's conclusions are in accordance with the law. Morris , ¶ 25, 403 P.3d at 987.
DISCUSSION
[¶13] A worker's compensation claimant has the burden of proving every essential element of his claims by a preponderance of the evidence. Morris , ¶ 25, 403 P.3d at 986. This burden applies equally when a claimant seeks coverage for additional claims "despite previous awards for the same injury." Landwehr v. State ex rel. Wyo. Workers' Safety & Comp. Div. , 2014 WY 25, ¶ 14, 318 P.3d 813, 819 (Wyo. 2014). To qualify for benefits, an injured employee must suffer an injury "arising out of and in the course of employment ...." Wyo. Stat. Ann. § 27-14-102(a)(xi) (LexisNexis 2017). In Beall v. Sky Blue Enterprises, Inc. , 2012 WY 38, 271 P.3d 1022 (Wyo. 2012), we explained that we interpret the phrase, "arising out of and in the course of employment" to require a "causal nexus between the injury and some condition, activity, environment or requirement of the employment." Id. ¶ 21, 271 P.3d at 1032 (citation and internal quotation marks omitted). Thus, "a worker's compensation claimant must establish that the particular physical malady for which he is seeking benefits is ... causally connected to a specified on-the-job incident." Matter of Claim of Rogers v. Russell Construction Co., Inc. , 2016 WY 80, ¶ 16, 376 P.3d 1172, 1175 (Wyo. 2016) ; see also Trump v. State ex rel. Wyoming Workers' Safety & Comp. Div. , 2013 WY 140, ¶ 21, 312 P.3d 802, 809 (Wyo. 2013).
[¶14] We have extended the burden of establishing causation to claimants seeking preauthorization for medical treatment:
Wyo. Stat. Ann. § 27-14-601(o) (LexisNexis 2013), and the Division's rules and regulations ... set forth the following standards for a preauthorization determination: (1) whether the treatment is reasonable; (2) whether the treatment is medically necessary; and (3) whether the treatment is in compliance with the Division's case management and treatment guidelines. Rules, Regulations & Fee Schedule, ch. 10 § 23(a) (filed June 6, 2011). This Court has added another consideration-whether the treatment is causally related to the workplace injury deemed compensable. Beall, 2012 WY 38, ¶¶ 21, 23, 271 P.3d at 1032.
Hildebrant , ¶ 15, 345 P.3d at 880.
[¶15] The Division claims that the Commission's decision to approve worker's compensation benefits for Mr. Lysne's knee replacement was unsupported by substantial evidence and contrary to law because: 1) the Commission erred as a matter of law when it did not require Mr. Lysne to present medical evidence to prove that his work injury caused the need for a total knee replacement ; 2) Mr. Lysne did not prove his work incident caused the injury requiring knee replacement; and 3) the Commission's rejection of medical testimony regarding causation was not supported by substantial evidence. We address these arguments in turn.
1. Proof of causation by medical evidence.
[¶16] Typically, a claimant must establish a causal connection between the workplace incident and the injury for which treatment is sought with "expert medical testimony that it is more probable than not that the work contributed in a material fashion to ... the injury." Guerrero , ¶ 15, 352 P.3d at 267. However, medical testimony is not required to establish causation in every instance. Proof of causation by a medical provider is not required in "exceedingly obvious cases" such as when a single incident is alleged to have caused the injury. We have explained:
Except in exceedingly obvious cases , proof of causation requires expert testimony to a reasonable degree of medical probability that a workplace event materially contributed to the precipitation, aggravation, or acceleration of the bodily damage for which compensation is sought - i.e., that it more probably than not had that effect.
*296 Stevens v. State ex rel. Wyoming Dep't of Workforce Servs. , 2014 WY 153, ¶ 50 n.6, 338 P.3d 921, 932 n.6 (Wyo. 2014).
Rogers , ¶ 16, 376 P.3d at 1175 (emphasis added).
[¶17] In Matter of Worker's Compensation Claim of Thornberg , 913 P.2d 863 (Wyo. 1996), we explained that "when a single incident is alleged to have caused an injury, medical testimony is not required if it is not essential to establish a causal connection between the occurrence and the injury." Id. at 867. However, even when a single incident is alleged to have caused the injury, medical testimony can be essential to establish a causal connection if the medical condition is "not 'immediately and directly or naturally and probably' the result" of the workplace incident. Id . (quoting Hansen v. Mr. D's Food Center , 827 P.2d 371, 373 (Wyo. 1992) ). "It is only '[w]here injuries are so immediately and directly or naturally and probably the result of an accident, [that] medical evidence is not essential to find a causal connection.' " Id . (quoting Hansen , 827 P.2d at 373 ) (alterations in original).
[¶18] We have required medical evidence to establish causation when a significant amount of time elapses between the initial workplace injury and the claim, when there is an intervening injury, when there is a preexisting condition, or when the claimant's symptoms and medical history are complex. See, e.g. , Landwehr , ¶ 18, 318 P.3d at 820-21 (nine years elapsed between initial injury and an intervening workplace injury, claimant's symptoms were complex, she had multiple issues, and she had a lengthy medical history with symptoms related to and unrelated to her claim); Hayes v. State ex rel. Wyoming Workers' Safety & Comp. Div. , 2013 WY 96, ¶ 22, 307 P.3d 843, 850 (Wyo. 2013) (medical testimony was necessary to demonstrate causal connection where medical issues were not the probable result of the workplace accident and case involved complex issues related to cystic fibrosis and its physical effects); Boyce v. State ex rel Wyo. Workers' Safety & Comp. Div. , 2005 WY 9, ¶ 16, 105 P.3d 451, 456 (Wyo. 2005) (medical testimony was necessary to prove link between worsening of preexisting medical condition and claimant's work activities).
[¶19] However, when the medical condition is "immediately and directly or naturally and probably" the result of the workplace incident, we have not required medical testimony. Thornberg , 913 P.2d at 867 (quoting Hansen , 827 P.2d at 373 ). For example, in Gray v. State ex rel. Wyoming Workers' Safety & Comp. Div. , 2008 WY 115, 193 P.3d 246 (Wyo. 2008), the claimant had suffered a compensable injury for which he was being treated. Four months after his initial injury he told his doctor that "his back 'popped' and that he experienced immediate severe pain in his lower extremities." Id . ¶ 4, 193 P.3d at 248. An MRI revealed that he had a herniated disk. Id . The division denied coverage for his herniated disk, concluding that he had not met his burden of establishing causation because his doctor did not testify that the herniated disk was probably or likely caused by the original incident and because an anonymous caller claimed he had injured his back lifting hay. Id . We reversed an Office of Administrative Hearings decision denying benefits, reasoning that medical evidence showing "that [claimant] was injured and that the injury he suffered was of the sort that could have occurred during the work-related incident," combined with the claimant's testimony regarding his symptoms between the incident and the diagnosis were sufficient to establish causation. Id . ¶ 17, 193 P.3d at 252.
[¶20] Similarly, in Hansen v. Mr. D's Food Center , 827 P.2d 371 (Wyo. 1992), we considered whether an employee who had an original compensable injury had established causation of the reoccurrence of her back injury over a year later. We concluded that medical testimony was not required and that her testimony that "no specific incident resulted in the recurrence of her back pain" was sufficient to find that her new claim was "grounded in the original injury." Id . at 374 ; see also Herrera v. State ex rel. Wyoming Workers' Safety & Comp. Div. , 2010 WY 103, ¶ 24, 236 P.3d 277, 284 (Wyo. 2010) (where there was a single incident and claimant testified that medication treated mental and physical injuries, medical testimony was not required to prove causation).
*297 [¶21] The Division argues that because Mr. Lysne's case "presents complex medical issues," he could not establish causation without medical evidence. The facts relevant to proof of causation in this instance, however, were not complex: Mr. Lysne did not have knee problems prior to his compensable workplace injury, and he has continually suffered since that time. Despite two surgeries, two injections, and the extensive physical therapy he has received since his injury, Mr. Lysne has failed to recover in any meaningful way. Three doctors recommended knee replacement or partial knee replacement surgery to address his ongoing knee problem. Finally, Mr. Lysne testified that his work injury "brought me to this position [needing knee replacement surgery]." Like Gray and Hansen , and unlike cases where we have held medical evidence was necessary, this case did not involve factors such as a significant amount of time between the initial workplace injury and the claim, an intervening injury, a preexisting condition, or complex symptoms or medical history. See supra ¶¶18-19. The Commission did not err as a matter of law when it did not require corroborative medical evidence to establish that Mr. Lysne's continued knee pain was caused by his original injury.
2. Proof of causation in this case.
[¶22] The Division contends that Mr. Lysne did not prove by a preponderance of the evidence that his work injury caused the need for a total knee replacement. The Division argues that because the Commission did not expressly find that the need for treatment was obviously or directly the result of the workplace accident, it applied the incorrect "legal standard regarding Lysne's burden of proof." We are unpersuaded.
[¶23] The claimant has the burden of proving by a preponderance of the evidence that a causal connection exists between a work-related injury and the injury for which worker's compensation benefits are being sought. Dale , ¶ 35, 188 P.3d at 563 (citing Sherwin-Williams Co. v. Borchert, 994 P.2d 959, 963 (Wyo. 2000) ; Taylor, ¶ 9, 123 P.3d at 146 ; Morgan v. Olsten Temp. Servs., 975 P.2d 12, 16 (Wyo. 1999) ). Thus, Mr. Lysne had the burden of proving by a preponderance of the evidence that the proposed knee replacement surgery is causally related to his workplace incident. The Commission found that he met this burden and concluded that the proposed surgery was compensable. The Commission recognized that Mr. Lysne bore the burden of establishing causation by a preponderance of the evidence, found that "total knee replacement surgery is ... causally related to [Mr. Lysne's] workplace injury," and concluded that he "met his burden of proof in establishing that he sustained a compensable work injury." The Commission also concluded that Mr. Lysne's injury is "a legitimate work injury," that "Mr. Lysne obtained a poor result from two prior arthroscopic surgeries and he was continuing to receive care," and that knee replacement surgery is "causally related to the work injury of 7/22/2013."
[¶24] On review, our task is to determine whether that decision was supported by substantial evidence. "When the burdened party prevailed before the agency, we will determine if substantial evidence exists to support the finding for that party by considering whether there is relevant evidence in the entire record which a reasonable mind might accept in support of the agency's conclusion." Dale, ¶ 22, 188 P.3d at 561.
[¶25] Here, the record contains substantial evidence that supports the conclusion that the proposed knee replacement is causally related to Mr. Lysne's compensable injury. Mr. Lysne first began experiencing knee pain when he injured his knee on the job in July of 2013. He testified that his pain continued and worsened as he sought a variety of both invasive and conservative forms of treatment. He had two arthroscopic surgeries performed by two different orthopedic surgeons. He had injections. He underwent extensive physical therapy.[1] Yet his pain continued, *298 and he never fully recovered from his injury. Two orthopedic surgeons recommended knee replacement surgery and a third recommended partial knee replacement surgery to resolve the knee pain which began when he stepped from the ladder onto the roof in July of 2013. This is substantial evidence which supports the Commission's conclusion. See Hildebrant , ¶ 18, 345 P.3d at 880-81 (testimony that spinal cord stimulator can relieve back pain and that claimant's ongoing leg and back pain was at least partially attributable to his workplace injury was substantial evidence to support hearing examiner's finding of a causal connection between the workplace injury and the proposed treatment).
[¶26] The record contains some evidence that degeneration in Mr. Lysne's knee could be an additional source of his ongoing pain. Dr. Trumper noted that Mr. Lysne "injured his knee at work," and since then has "had no significant improvement." He concluded that his "history and exam would suggest that his symptoms are all degenerative in nature." There is no indication in the record regarding whether Mr. Lysne's workplace injury caused the degeneration or whether it came about independently. However, even if the degeneration could be considered a preexisting condition, in Wyoming, "[i]f an employee suffers from a preexisting condition, that employee may still recover if his employment substantially or materially aggravates that condition." Straube v. State ex rel. Wyoming Worker's Safety & Comp. Div. , 2009 WY 66, ¶ 15, 208 P.3d 41, 47 (Wyo. 2009) (quoting Lindbloom v. Teton Int'l , 684 P.2d 1388, 1389 (Wyo. 1984) ).
[¶27] In Straube , the claimant injured his knee at work and received arthroscopic surgery, which was covered by worker's compensation. Id . ¶¶ 3-4, 208 P.3d at 42-43. After his MRI, but before surgery, his surgeon noted that "it is impossible to tell whether or not [his] injury is acute or chronic." Id . After surgery, the claimant underwent physical therapy, but never completely recovered. Id . ¶ 6, 208 P.3d at 43. He requested preauthorization for a subsequent surgery, but the Division denied his request, concluding that he had been appropriately compensated for his work-related injury and that any additional medical treatment was solely related to his preexisting condition. Id . ¶ 8, 208 P.3d at 44. We reversed, recognizing that medical consequences of a work injury are not apportioned "between the immediate injury and a preexisting condition." Id . ¶ 18, 208 P.3d at 48. Rather, "an employer takes an employee as he finds him." Id . ¶ 17, 208 P.3d at 48. We held, "anything that is a direct continuing consequence [of the work injury] is also covered. ... Straube's knee never fully recovered after the work injury, as evidenced by the continued weakness in the knee and Straube's continued pain." Id . ¶¶ 17-18, 208 P.3d at 48. The same reasoning applies here. Regardless of whether Mr. Lysne had degeneration due to a preexisting condition, his original meniscal tear was a compensable workplace injury and he never fully recovered from that injury.
[¶28] The Commission's conclusion that Mr. Lysne met his burden of proving causation by a preponderance of the evidence was not contrary to the great weight of the evidence, and we will not overturn it.
3. Rejection of medical testimony regarding causation.
[¶29] Finally, the Division argues that the Commission's rejection of medical evidence regarding causation was not supported by substantial evidence and was contrary to law. The Division argues that the Commission incorrectly substituted its own medical opinions in place of Dr. Nieves' findings regarding causation, improperly discounted Dr. Nieves' causation opinion, improperly disagreed with Dr. Nieves' opinion that Mr. Lysne was obese, improperly discounted both his and Dr. Reichhardt's opinions because they were not orthopedic surgeons, and failed to cite medical evidence to support its conclusion that complications occur "quite regularly."
[¶30] Whether a causal connection exists is a question of fact. Taylor , ¶ 9, 123 P.3d at 146 (citing Hurley v. PDQ Transport, Inc., 6 P.3d 134, 138 (Wyo. 2000) ). This *299 Court has been clear in its requirements for the consideration to be given medical opinion testimony. When presented with medical opinion testimony, the Commission, "as the trier of fact, is responsible for determining relevancy, assigning probative values, and ascribing the relevant weight to be given to the testimony." Worker's Comp. Claim of Rodgers v. State ex rel. Wyo. Workers' Safety & Comp. Div., 2006 WY 65, ¶ 24, 135 P.3d 568, 576 (Wyo. 2006). "In weighing the medical opinion testimony, the fact finder considers: (1) the opinion; (2) the reasons, if any, given for it; (3) the strength of it; and (4) the qualifications and credibility of the witness or witnesses expressing it." Alphin v. State ex rel. Wyoming Workers' Safety & Comp. Div., 2010 WY 39, ¶ 19, 228 P.3d 61, 69 (Wyo. 2010) (quoting Rodgers , ¶ 24, 135 P.3d at 576 ). "The task of determining the credibility of the witnesses and weighing the evidence is assigned to the Medical Commission, and its determination will be overturned only if it is clearly contrary to the great weight of the evidence." Hurley , 6 P.3d at 138 (citing Helm v. State ex rel. Wyo. Workers' Safety & Comp. Div., 982 P.2d 1236, 1237 (Wyo. 1999) ).
[¶31] Dr. Nieves performed an IME and, in the addendum to his original report, concluded, without providing rationale, that there was no causal connection:
1. Is the proposed surgery for left total knee replacement causally related to Mr. Lysne's work injury of 7/22/2013? Please explain.
Answer: In my professional opinion within a reasonable degree of medical probability a left total knee replacement surgery is not causally related to Mr. Lysne's work injury of 07/22/2013 in which the resulting work injury was of a medial meniscus injury.
Dr. Nieves also opined that Mr. Lysne had reached MMI. The Division's argument centers around the MMI opinion, which was unrelated to Dr. Nieves' opinion regarding causation. In support of his conclusion that Mr. Lysne had reached MMI, Dr. Nieves wrote that "no additional diagnostic or treatment interventions are indicated" and that
the negative factors against additional interventions on [Mr. Lysne] includes [sic]
• The subjective complaints are out of proportion to objective findings
• High level of perceived disability as evident by Pain Disability Questionnaire of 132
• Chronic smoker (one pack a day for 30 years)
• Obesity (H 5'10?, W 230, BMI 33)
• Work related injury
• Poor response to treatment interventions (conservative and surgical).
• 1 year and 3 ½ months out of work
None of these factors address causation. The Commission was critical of Dr. Nieves' evaluation because his report "only casually noted the injection provided by Dr. Basta four days earlier and nowhere in his report did he indicate that Mr. Lysne was on crutches and had been ordered to avoid all weight bearing on the left leg." The Commission also found "Dr. Nieves' report and opinion is flawed in other respects." The Commission referred to the above-quoted factors regarding Dr. Nieves' conclusion that Mr. Lysne had reached MMI and explained:
The [Commission] closely listened to the testimony of Mr. Lysne and his significant other and our findings are almost completely opposite of those of Dr. Nieves. Mr. Lysne is not an obese person. He is large but sturdy and has been engaged in the heavy occupation of roofing his entire life. He testified that the bundles of shingles he was carrying up the ladder on the date of the injury was 78 pounds. We found him to be a very accurate historian, and not one who exaggerates his condition. We further discount Dr. Nieves' opinion because he failed to discuss the treatment that had been recommended by Dr. Basta just four days earlier and he had barely commenced the non-weight bearing activity that had been prescribed. Dr. Basta clearly indicated that she wanted to see him back after that period of time and would consider a third arthroscopic procedure.
Mr. Lysne did not have an opportunity to follow Dr. Basta's advice, and the [Commission] finds that Mr. Lysne was NOT at *300 a level of Maximum Medical Improvement at the time that he was rated by Dr. Nieves. Dr. Nieves' determination that he was at MMI was premature, and failed to fully consider the treatment that had been recommended by Dr. Basta.
Mr. Lysne had undergone two surgeries, a variety of conservative treatments, including physical therapy and injections, and continued to have problems with his knee, which we find to be credible and related to the work injury. Mr. Lysne's testimony that he injured his knee during physical therapy after the first surgery provides a completely plausible explanation as to why he failed to improve after the initial surgery. Radiologic studies were not immediately provided after the incident at physical therapy, and we are left with the testimony of Mr. Lysne and [his girlfriend] that his condition worsened after the incident and his knee was again in need of surgical attention after the incident at physical therapy. The medical panel notes that such complications after surgery occur quite regularly, and appear to have occurred with Mr. Lysne's treatment, complicating his course of care and treatment.
....
We further note that Dr. Nieves is NOT an orthopedic surgeon, but rather is an occupational medicine physician, and we place higher weight on the opinions of the various surgeons in this case, who have indicated that Mr. Lysne is in need of additional treatment, including the possibility of a knee replacement.
[¶32] Dr. Reichardt found the identical date of MMI and impairment rating as Dr. Nieves. With regard to the causation issue, Dr. Reichardt wrote that he was "unable to support a left total knee arthroplasty being done as treatment" for Mr. Lysne's work injury "for the reasons outlined above in paragraph 6." Paragraph 6 states:
6. What is your prognosis and what are your treatment recommendations? From a physiatric [2 ] perspective, his prognosis is guarded. He has had multiple surgeries without a good outcome to date. His knee pain and functional limitations are more that would be anticipated based on his MRI. He has underlying diabetes and significant ongoing smoking habit [sic]. He is overweight. From a physiatric perspective, it would appear appropriate for him to focus on an independent active exercise program as the primary treatment modality. Continued use of an anti-inflammatory would appear to be reasonable. It would be best to try to taper him off of his opioids, particularly within the setting of his sleep apnea and it would be appropriate for him to pursue a sleep study outside of the setting of his Workers' Compensation claim to evaluate for sleep apnea.
[¶33] The Commission recognized that Dr. Reichardt "concluded that the total knee arthroscopy was not warranted." However, like its evaluation of Dr. Nieves' reports, the majority of the Commission's findings addressing Dr. Reichardt's report expressed the Commission's concern regarding Dr. Reichardt's MMI conclusion and his impairment rating, not the causation issue, which was not expressly addressed by Dr. Reichardt. The Commission explained that Dr. Reichardt's report "provided a fairly thorough evaluation, but he appears to have simply adopted Dr. Nieves' physical impairment rating, as well as Dr. Nieves' date of Maximum Medical Improvement."
[¶34] There is substantial evidence in the record as a whole to support the Commission's decision to reject the conclusions offered by Dr. Nieves and Dr. Reichardt as to causation. The Commission did not disregard the evidence contained in Dr. Nieves' and Dr. Reichardt's reports; rather, it evaluated those reports, and for valid reasons, discounted them. The Commission was entitled to give more weight to the evidence it deemed more credible and reliable. See Straube , ¶ 25, 208 P.3d at 49 (Burke, J., dissenting) ("it is up to the Medical Commission, not this Court, to determine the credibility of witnesses and the weight afforded to conflicting evidence," noting that "[w]e defer to the experience and expertise of the agency in its weighing of the evidence") (quoting *301 Southwest Wyoming Rehab. Ctr. v. Emp't Sec. Comm'n of Wyoming, 781 P.2d 918, 921 (Wyo. 1989) ). The Commission relied upon its own observations of Mr. Lysne when he testified before it as well as the opinions of surgeons who treated and/or evaluated Mr. Lysne. Dr. Yang noted that Mr. Lysne had two failed arthroscopies and discussed the total knee arthroplasty as the alternative option to repeat injections, which have failed in the past. Dr. Rangitsch thought that Mr. Lysne was "a candidate for unicompartmental knee replacement." Dr. Trumper reported that Mr. Lysne "exhausted conservative treatment including extensive therapy, intra-articular injections and two knee arthroscopies. Based upon the pain he feels and its location, I think the most predictable procedure for him would be a total knee replacement."
[¶35] Our review of the record reveals that the Commission's rejection of Dr. Nieves' and Dr. Reichardt's conclusions regarding causation is not "contrary to the great weight of the evidence." Hurley, 6 P.3d at 138. "The role of the Medical Commission is to resolve medically contested issues through the professional expertise of health care providers." Id. (citing Snyder v. State ex rel. Wyo. Workers' Comp. Div., 957 P.2d 289, 295 (Wyo. 1998) ). That role includes determining the weight to be given to medical opinion testimony. Hurley , 6 P.3d at 138. The Commission is "not legally obligated to accept the findings of an impartial, appointed independent medical examiner if, in their expertise, the Commission determines the factual basis for the report and conclusion is not credible or reliable." Id . The Commission articulated its findings and the weight it assigned to the medical testimony; we will not usurp its role as the trier of fact and judge of the credibility of witnesses unless its conclusions are clearly contrary to the great weight of the evidence. Thornberg , 913 P.2d at 869. Here, the Commission's conclusions are supported by the evidence.
CONCLUSION
[¶36] The Commission's finding that Mr. Lysne's work injury caused his need for knee replacement surgery was supported by substantial evidence was not contrary to law. Medical evidence of causation was not required because in this instance Mr. Lysne's need for knee replacement surgery was "immediately and directly or naturally and probably" the result of the accident. There was substantial evidence to support the Commission's finding of causation and the Commission's rejection of contrary medical evidence that the workplace injury was not causally related to the requested knee replacement surgery. We affirm.

The Division argues that Mr. Lysne's statement that his knee "popped" during physical therapy amounted to a re-injury and thus this matter should have been analyzed under the second compensable injury rule. This argument was raised for the first time on appeal; consequently, we will not consider it here. See Reichert v. Daugherty , 2018 WY 103, ¶¶ 23-25, 425 P.3d 990, 996-97 (Wyo. 2018).

Physical and rehabilitative medicine.